1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   AMERICAN GENERAL LIFE              No. 2:06-CV-02048-MCE-KJM
     INSURANCE COMPANY,
12
              Plaintiff and
13            Cross-Defendant,

14        v.                            <u>MEMORANDUM AND ORDER</u>

15   REBECA GREEN,

16            Defendant and
              Cross-Plaintiff.
17
                          ----oo0oo----
18

19        Plaintiff and Cross-Defendant, American General Life

20   Insurance Company ("AG") initiated the current action against

21   Defendant and Cross-Plaintiff, Rebeca Green ("Ms. Green"), the

22   beneficiary of a life insurance policy ("the Policy") AG issued

23   to Ms. Green's husband.  AG requests Declaratory Relief that, due

24   to material misrepresentations the insured allegedly made on the

25   insurance application ("the Application"), the Policy is void *ab*

26   *initio*, the policy is properly subject to rescission, and

27   Ms. Green is not entitled to the Policy's death benefit.

28   *///*

                                    1

1  Ms. Green filed Cross-Claims against AG for Breach of Contract,

2  Breach of the Implied Covenant of Good Faith and Fair Dealing,

3  and Fraud.  Presently before the Court is AG's February 27, 2008,

4  Motion for Summary Judgment on its Declaratory Relief claim and

5  each of Ms. Green's Cross-claims.[1]

6

7                        **BACKGROUND**[2]

8

9      In April of 2004, Edward Green ("Mr. Green") applied to AG

10  for life insurance, a process which required him, *inter alia*, to

11  execute Parts A and B of the Application.  At the center of the

12  current dispute are three specific questions:

13      Question No. 17(F) on Part A asked, "Have any proposed
        insureds ever been convicted of, or pled guilty or no
14      contest to a felony, or do they have any charges
        pending against them?"
15
        Question No. 7(D)(1) on Part B asked, "Has any proposed
16      insured ever: 1) sought or received advice, counseling
        or treatment by a medical professional for the use of
17      alcohol or drugs, including prescription drugs?"

18      Question 7(D)(2) on Part B asked, "Has any proposed
        insured ever: 2) used cocaine, marijuana, heroin,
19      controlled substances or any other drug, except as
        legally prescribed by a physician?"

20

21  ///

22  ///

23  ─────────────────

24      [1] Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefing.  E.D.
    Cal. Local Rule 78-230(h).
25
        [2] Unless otherwise stated, these facts are taken from AG's
26  Statement of Undisputed Facts and Ms. Green's Responses thereto
    ("UF").  Both parties raised various evidentiary objections.  To
27  the extent evidence is not relied on here, those objections are
    moot.  As is necessary, the Court will address the parties'
28  specific objections to evidence it relied upon in this Order.

Mr. Green answered, "No," to each of these questions.  AG relied

on these answers when it approved Mr. Green's Application and

when it issued the Policy.  AG contends that each of these

answers was material to AG when it underwrote and issued the

Policy.

Additionally, at the time of execution, the Application

contained the following clause:

> I have read the above statements or they have been read
> to me.  They are true and complete to the best of my
> knowledge and belief.  I understand that this
> application: (1) will consist of Part A, Part B, and if
> applicable, related forms; and (2) shall be the basis
> for any policy issued.  I understand that any
> misrepresentation contained in this application and
> relied on by the Company may be used to reduce or deny
> a claim or void the policy if: (1) it is within its
> contestable period; and (2) such misrepresentation
> materially affects the acceptance of the risk.

On May 2, 2004, AG issued the $250,000 Policy to Mr. Green.

The Policy contained an "Incontestability Provision" which

stated, "Except for nonpayment of premiums, we will not contest

this policy after it has been in force during the lifetime of the

insured for two years from the date of issue."

Mr. Green passed away on August 1, 2005, while the Policy

was still contestable.  Ms. Green, the primary beneficiary of the

Policy, subsequently submitted a claim to AG for the Policy's

death benefit.

///

///

///

///

///

///

1    After receiving Ms. Green's claim, AG conducted a

2 contestable claim investigation.  As part of that investigation,

3 a life insurance underwriter conducted an underwriting review.

4 Based on information obtained during the claim investigation and

5 underwriting review, AG determined that Mr. Green's negative

6 answers to Questions 7(D)(1) and 7(D)(2) on Part B were material

7 misrepresentations.[3]  Pursuant to its findings, AG made the

8 decision to rescind the Policy.

9    On February 14, 2006, AG wrote a letter to Ms. Green

10 advising her that, due to Mr. Green's alleged material

11 misrepresentations, it was rescinding the Policy.  In this

12 letter, AG offered to refund past premiums paid to Ms. Green.

13 Decl. of Diana Fields ("Fields Decl.), ¶ 17 (Feb. 20, 2008).  AG

14 did later return the premiums, but Ms. Green did not cash the

15 check and instead returned it to AG through an attorney.  Id.

16    Pertinent to AG's decision to rescind the Policy were

17 notations in several of Mr. Green's medical records that are now

18 before the Court.  The medical records of Dr. Debra Clyde, dated

19 September 23, 2004, confirm that Mr. Green told Dr. Clyde he had

20 smoked marijuana until approximately five months prior when he

21 had moved from Southern California to Alturas.  Declaration of

22 Charan M. Higbee ("Higbee Decl."), Exh. J, p. 4 (Feb. 27, 2008).

23 ///

24 ///

25

26    [3] The Court notes that AG did not object to Mr. Green's
answer to 17(F) until a later date.  However, this is not
27 material to the Court's decision.  The Court is also aware that
Ms. Green denies these answers were misrepresentations, but it is
28 undisputed that AG so found.

1  A "Little Company of Mary Hospital Anesthesia Pre-Operative
2  Assessment and Consent" form also indicates that Mr. Green was
3  currently smoking marijuana as of March 31, 1997.  Def. and
4  Cross-Pl.'s Separate Statement of Disputed Facts ("DF"), Exh. 3.[4]
5  Additionally, according to Dr. Jack Futterman's February 18,
6  2005, "Modoc County Health Services Adult Mental Health
7  Assessment" form, Mr. Green had smoked marijuana two times per
8  week up until the year prior and had used methamphetamine
9  briefly.  Higbee Decl., Exh. N, p. AGL0228.  Also according to
10 that form, Mr. Green felt he had abused hydrocodone, codeine, and
11 Xanax in the past.  Id.  Finally, Dr. Slutzger's March 31, 1997,
12 "Short Form History and Physical" record indicates that Mr. Green
13 previously took codeine, which he had obtained on the street.
14 Higbee Decl., Exh. D p. 000133.

15      Ms. Green subsequently confirmed, in a written statement she
16 made to AG during the contestable claim investigation, that
17 Mr. Green had smoked marijuana until 2004.  Fields Decl., ¶ 7,
18 Exh. C, 2:14.  However, Ms. Green also claims that Mr. Green used
19 marijuana for pain management and that a doctor had told him it
20 was okay.  Higbee Decl., Exh. A, 39:1-41:6.  Nevertheless,
21 Ms. Green has no personal knowledge that Mr. Green ever had a
22 physician's recommendation or approval and has not submitted, to
23 AG or to this Court, any independent proof to support her
24 assertion.  Id., 41:7-11.
25 ///
26
27      [4] Though Ms. Green styles her document as a Statement of
   "Disputed" Facts, the evidence relied upon here consists of a
   medical record she put before the Court and is not itself
28 disputed.

1    Finally, Ms. Green is unaware of any misrepresentations made
2    to Mr. Green relating to sale of the Policy and has stated that
3    AG made no misrepresentations to her regarding its sale.

4

5                              **STANDARD**

6

7        The Federal Rules of Civil Procedure provide for summary
8    judgment when "the pleadings, depositions, answers to
9    interrogatories, and admissions on file, together with
10   affidavits, if any, show that there is no genuine issue as to any
11   material fact and that the moving party is entitled to a judgment
12   as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
13   principal purposes of Rule 56 is to dispose of factually
14   unsupported claims or defenses.  Celotex Corp. v. Catrett, 477
15   U.S. 317, 325 (1986).

16       Rule 56 also allows a court to grant summary adjudication on
17   part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party
18   claiming relief may move...for summary judgment on all or part of
19   the claim."); see also Allstate Ins. Co. v. Madan, 889 F. Supp.
20   374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter
21   Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

22       The standard that applies to a motion for summary
23   adjudication is the same as that which applies to a motion for
24   summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v.
25   ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).
26   ///
27   ///
28   ///

6

1          Under summary judgment practice, the moving party
2      always bears the initial responsibility of informing
       the district court of the basis for its motion, and
3      identifying those portions of 'the pleadings,
       depositions, answers to interrogatories, and admissions
4      on file together with the affidavits, if any,' which it
       believes demonstrate the absence of a genuine issue of
5      material fact.

6  Celotex at 323(quoting Rule 56(c)).

7          If the moving party meets its initial responsibility, the

8  burden then shifts to the opposing party to establish that a

9  genuine issue as to any material fact actually does exist.

10 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

11 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

12 253, 288-89 (1968).

13         In attempting to establish the existence of this factual

14 dispute, the opposing party must tender evidence of specific

15 facts in the form of affidavits, and/or admissible discovery

16 material, in support of its contention that the dispute exists.

17 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

18 the fact in contention is material, i.e., a fact that might

19 affect the outcome of the suit under the governing law, and that

20 the dispute is genuine, i.e., the evidence is such that a

21 reasonable jury could return a verdict for the nonmoving party.

22 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

23 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper

24 Workers, 971 F.2d 347, 355 (9th Cir. 1987).

25 ///

26 ///

27 ///

28 ///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

1                              **ANALYSIS**

2

3         AG argues that Mr. Green made material misrepresentations on

4    the Application that render the Policy void *ab initio*.   Since

5    this Court agrees based on Mr. Green's answer to 7(D)(2) on Part

6    B, Ms. Green's Cross-claims for Breach of Contract and Breach of

7    the Implied Covenant of Good Faith and Fair Dealing, which are

8    dependent on the existence of a valid Policy, are moot.

9    Additionally, there is nothing in the record to indicate that AG

10   should be estopped from rescinding the Policy.   Finally, there is

11   also no evidence sufficient to support Ms. Green's Cross-claim

12   for Fraud.   Hence, AG's Motion for Summary Judgment is granted.[5]

13

14   **A.   Mr. Green's Negative Answer to 7(D)(2) on Part B of the**

15   **     Application Justifies AG's Rescission of the Policy.**

16        "[An insurance company] has the unquestioned right to select

17   those whom it will insure and to rely upon him who would be

18   insured for such information as it desires as a basis for its

19   determination to the end that a wise discrimination may be

20   exercised in selecting its risks."   Robinson v. Occidental Life

21   Ins. Co. of Cal., 131 Cal. App. 2d 581, 586 (2d Dist. 1955).

22   "Each party to a contract of insurance shall communicate to the

23   other, in good faith, all facts within his knowledge which are or

24   which he believes to be material to the contract...and which the

25   other has [no]...means of ascertaining."   Cal. Ins. Code § 332;

26   see also Robinson, 131 Cal. App. 2d at 585.

27   _____

28        [5] Since the Court has rendered judgment in AG's favor, AG's
     Motion to Strike portions of Ms. Green's Opposition is moot.

                                      9

"Three factors are reviewed in determining whether an insurance company has the right to rescind a policy, which are: 1) that the applicant made a misrepresentation; 2) that the misrepresentation was material; and 3) that the applicant knew that he made a material misrepresentation."  Casey by Casey v. Old Line Life Ins. Co. of Am., 996 F. Supp. 939, 944 (N.D. Cal. 1998) (citing Trinh v. Metro. Life Ins. Co., 894 F. Supp. 1368, 1372 (N.D. Cal. 1995)).

**1.   Mr. Green's Answer to 7(D)(2) was a Misrepresentation.**

As a threshold matter, since the medical records are of utmost importance in this case, the Court will address Ms. Green's objections to the use of some of those records as unauthenticated.  She is correct that "[d]ocuments which have not had a proper foundation laid to authenticate them cannot support [or defend against] a motion for summary judgment."  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (quoting Can. v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987)).  Moreover, "[a] writing is not authenticated simply by attaching it to an affidavit ... The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery."  U.S. v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970).

///

///

1    AG argues that it properly authenticated the relevant

2  medical records via declarations indicating that those records

3  were produced during discovery.  See Reply 2:1-8.  Indeed, the

4  only evidence to support authentication of the medical records of

5  Dr. Harvey and West Hills Hospital is the Declaration of Charan

6  M. Higbee, AG's attorney, stating that his office subpoenaed

7  those records during the course of this litigation.  See Higbee

8  Decl., ¶¶ 6, 12.  His declaration is not sufficient.  See Orr v.

9  Bank of Am., NT & SA, 285 F.3d 764, 774 (9th Cir. 2002) (attorney

10 affidavit stating that an exhibit was a "true and correct copy"

11 did not authenticate the transcript of the deposition because the

12 attorney lacked personal knowledge).

13   Moreover, the case law on which AG relies does not support

14 AG's proposition.  See Parker v. FId. Sec. Life Ins. Co., 2007 WL

15 2688811 (E.D. Cal. Sept. 12, 2007).  In that case, the disputed

16 records were produced during discovery by the opposing party.

17 Id. at *2 n.4;  See also Orr at 777 n.20.  In this case, the

18 records were subpoenaed directly from the doctor's office or

19 medical facility.

20   The purpose of the authentication requirement is to ensure

21 that the evidence submitted is what the proponent claims.  Fed.

22 R. Evid. 901(a).  While this purpose is served if the opposing

23 party supplies a record during discovery, it is not necessarily

24 served when a third party, such as a doctor or hospital, is the

25 source.  In order for the current records to be admissible, AG

26 needed to properly authenticate the documents as it did other

27 records.

28 ///

11

1   Hence, the records of Dr. Harvey and West Hills Hospital are

2   inadmissible, and the Court did not rely upon those records to

3   reach its decision.

4       Ms. Green also objects to the medical records of Dr.

5   Futterman and Modoc County Health Services.  However, AG

6   authenticated these records through the appropriate deposition

7   testimony as required by Federal Rule of Evidence 901.[6]  See

8   23:6-28:12.  Additionally, these records are admissible pursuant

9   to Rule 803(4) as exceptions to the hearsay rule.

10      AG has provided sufficient evidence to prove that Mr. Green

11  smoked marjiuana and took other drugs without a prescription

12  prior to filling out the Application.  According to Dr.

13  Futterman's records, Mr. Green smoked marijuana approximately

14  twice a week.  Higbee Decl., Exh. N, AGL0228.  Additionally, he

15  used methanphetamine and obtained codeine "on the street" as

16  well.  Id.  Finally, Mr. Green stated that he felt he had abused

17  hydrocodone, codeine, and Xanax in the past.  Id.  Other medical

18  records confirm that Mr. Green smoked marijuana, and Ms. Green

19  testified to the same.  Higbee Decl., Exh. J, p. 4; DF, Exh. 3.

20      In her Opposition, Ms. Green makes several arguments to try

21  to overcome the ample evidence supporting a finding of

22  Mr. Green's past drug use.  First, Ms. Green argues that the word

23  "use" is ambiguous and that Mr. Green could have been answering

24  truthfully if he had merely "tried" marijuana in the past.

25  ///

26

27      [6] See Hoston v. J.R. Watkins Co., 300 F.2d 869, 870 (9th
    Cir. 1962) (concluding that summary judgment was proper based on
28  deposition testimony).

12

1  Though the record does not support the proposition that Mr. Green
2  merely "tried" various drugs, Ms. Green is correct that "[i]t is
3  a well-settled rule that all ambiguities must be interpreted
4  against the insurer.  However, courts 'will not engage in
5  strained or tortured interpretation of the terms of an insurance
6  contract in order to fabricate an ambiguity where none exists.'"
7  Casey, 996 F. Supp. at 945-946.   This Court finds the language
8  of 7(D)(2) to be unambiguous and will not strain or torture the
9  language to find otherwise.

10     Next, Ms. Green argues that Mr. Green smoked marijuana
11  pursuant to a recommendation from a physician, rendering his
12  answer to 7(D)(2) a true and correct response.  However,
13  Ms. Green has provided no admissible evidence to support such a
14  claim.  Ms. Green's only support for this assertion are her own
15  statements that Mr. Green told her that a doctor had told him it
16  was okay to smoke marijuana for pain.  Ms. Green's statements do
17  not create a triable issue of fact because she has submitted no
18  evidence showing that she has any personal knowledge of any
19  recommendation or approval.

20     Nevertheless, Ms. Green further claims that since the record
21  is lacking admissible evidence that Mr. Green smoked marijuana
22  prior to 1997, he must have legally smoked it pursuant to a
23  doctor's recommendation because California's Compassionate Use
24  Act ("the Act") went into effect in 1996.[7]

25  _____

26     [7] Cal. Health and Safety Code § 11362.5.  The Act creates an
    affirmative defense to criminal prosecution if a criminal
27  defendant can prove he or she used the marijuana pursuant to a
    doctor's recommendation or approval.  People v. Fisher, 96 Cal.
28                                        (continued...)

13

1   The fallacy of this logic is obvious since it completely ignores

2   the fact that the Act still required a doctor's recommendation or

3   approval, proof of which is completely lacking in the current

4   record.  The existence of a California law exempting marijuana

5   users from prosecution under some circumstances does not itself

6   prove that Mr. Green acted pursuant to that statute when he used

7   the drug.  Notably, Ms. Green appears to be determined to prove

8   that Mr. Green's marijuana use was "legal," but that is not the

9   relevant issue.  Rather, the issue is whether Mr. Green had a

10  recommendation.  Since there is ample evidence that Mr. Green

11  smoked marijuana in the past, the only excuse for his failing to

12  answer 7(D)(2) in the affirmative would be proof of a

13  prescription from a physician.  There is absolutely no evidence

14  in the record to support that proposition.

15      Additionally, Mr. Green's medical records indicate that he

16  used both methamphetamine and codeine, the latter of which he

17  obtained "on the street."  Ms. Green does not, and could not in

18  good faith, allege that Mr. Green used methamphetamine pursuant

19  to any prescription or recommendation.

20  ///

21

22

23      [7](...continued)
    App. 4th 1147, 1151-1152 (3d Dist. 2002).  "The word

24  'recommendation,' as used in the Compassionate Use Act, suggests
    the physician has raised the issue of marijuana use and presented

25  it to the patient as a treatment that would benefit the patient's
    health by providing relief from an illness. The word 'approval,'

26  on the other hand, suggests the patient has raised the issue of
    marijuana use, and the physician has expressed a favorable

27  opinion of marijuana use as a treatment for the patient. Thus, a
    physician could *approve* of a patient's suggested use of marijuana

28  without ever *recommending* its use."  People v. Jones, 112 Cal.
    App. 4th 341, 347 (3d Dist. 2003) (emphasis in original).

Furthermore, since Mr. Green obtained codeine "on the street," it is reasonable to infer that he was not taking the medication pursuant to a prescription.  Therefore, based on the current record showing that Mr. Green smoked marijuana, and used methamphetamine and codeine without prescriptions, Mr. Green should have answered 7(D)(2) in the affirmative.

Finally, Ms. Green argues that AG has the burden to disprove all plausible explanations for any alleged misrepresentations. See Thompson v. Occidental Life Ins. Co. of Cal., 9 Cal.3d 904, 919 (1973) ("[T]he burden was on [the insured] to negate to the satisfaction of the trier of fact the various plausible explanations for the incomplete answers on [the insured's] application.").  Her argument ignores the fact that the Federal Rules of Civil Procedure require Ms. Green to first raise such plausible explanations and supply proof to support those explanations.  AG is not required to raise all plausible explanations for the misrepresentations and to subsequently prove those explanations wrong.  AG's burden is to "negate" those explanations, but it can only negate what Ms. Green has first adequately supported.  Id. at 919.  Any contrary conclusion would undermine the very principles governing summary judgment.

Nevertheless, Ms. Green goes on to argue that AG bears the burden of proving that Mr. Green did not have a prescription to use marijuana pursuant to the Act.  To the contrary, since the Act provides individuals with an affirmative defense to criminal prosecution, the burden is on Ms. Green to raise the defense in this context and to prove that Mr. Green did have a physician's recommendation or approval.

Indeed, it is unclear how AG would prove that Mr. Green did not have a prescription, other than, as it did here, to show that Ms. Green has no evidence of a recommendation.  Since Ms. Green has provided no evidence showing that Mr. Green used any of the relevant drugs pursuant to a prescription, her argument must fail.  Therefore, this Court finds that Mr. Green's answer to 7(D)(2) was a misrepresentation.

The crux of the parties' current dispute is whether Mr. Green actually made any misrepresentations on the Application.  Because this Court finds that Mr. Green's negative answer to 7(D)(2) on Part B asking if he "had ever used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician" was a misrepresentation, the Court need not address any other alleged misstatements.

**2.  Mr. Green's Answer to 7(D)(2) was Material to AG.**

"Materiality is determined by the probable and reasonable effect that truthful disclosure would have had on the insurer in determining the advantages of the proposed contract."  <u>Trinh v. Metro. Life Ins. Co.</u>, 894 F. Supp. 1368, 1372 (N.D. Cal. 1995). This is a subjective determination.  <u>See Burns v. The Prudential Ins. Co. of Am.</u>, 201 Cal. App. 2d 868, 871 (2d Dist. 1962).  Ms. Green does not contest that Mr. Green's answer to question 7(D)(2) was material to AG.  UF No. 13.

///

///

Therefore, since the materiality determination is subjective, and since Ms. Green admitted the misrepresentation was material to AG, no further inquiry is required.  The Court finds that Mr. Green's misrepresentation in response to 7(D)(2) was material to AG.

### 3.   Mr. Green Had Knowledge That He Made A Material Misrepresentation When He Answered 7(D)(2).

"[I]f the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission."  Thompson, 9 Cal. 3d at 916 (1973).  "[F]ailure of an applicant to disclose a physical condition of which he is ignorant will not affect the policy and a layman might reasonably be excused if, in disclosing information, he failed to understand the meaning of certain medical terms and for that reason omitted some fact in his medical history."  Cohen v. Penn Mutual Life Ins. Co., 48 Cal. 2d 720, 726 (1957).

Contrary to those cases, Mr. Green's misrepresentation does not concern incomprehensible medical conditions of which he can claim ignorance.  Rather, Mr. Green was asked specific questions regarding his history of drug use.  It is clear that Mr. Green was aware he had used marijuana, methamphetamine, and codeine. In fact, he self-reported such use to his physicians, which is indicative of his knowledge.

///

///

17

See San Francisco Lathing Co., Inc. v. Penn Mut. Life Ins. Co., 144 Cal. App. 2d 181, 187 (1st Dist. 1956) ("It [was] idle for appellant to argue that there [was] no evidence to support the finding that the insured knew [the] facts since the evidence [was] clear that it was he who reported them to his physician."). Therefore, Mr. Green had the requisite knowledge and AG was justified in rescinding the Policy.

**B.   AG Is Not Estopped From Rescinding The Policy.**

Ms. Green argues that, even if Mr. Green made a material misrepresentation on the Policy, AG should be estopped from rescinding because it failed to timely investigate and conducted an inadequate investigation.  However, Ms. Green points to no cases that support either proposition.

**1.   AG Is Not Estopped From Rescinding The Policy Based On The Alleged Untimeliness Of Its Investigation.**

At least one court has stated, even if in dicta, "It was not incumbent upon [the insurer] to investigate [the insured's] statements made to the examiner.  It was [the insured's] duty to divulge fully all he knew.  No authority is cited and none will be found holding that an insured or his beneficiaries may escape the consequences of his deception by placing upon the insurer the burden of investigating his verified statements."  Robinson, 131 Cal. App. 2d at 585.

///
///

18

1    Ms. Green is similarly unable to cite to any authority for

2  the proposition that AG was required to investigate sooner.  The

3  cases on which she primarily relies involved investigations

4  initiated after the expiration of the contestability period.  See

5  United FId. Life Ins. Co. v. Emert, 49 Cal. App. 4th 941 (4th

6  Dist. 1996); Amex Life Assurance Co. v. Super. Ct. of Los Angeles

7  County, 14 Cal. 4th 1231, 1243 (1997).  However, unlike those

8  cases, when Mr. Green died, his Policy was still contestable.

9  While policy reasons abound for prohibiting an insurance company

10 from waiting until the policy is incontestible prior to

11 investigating, those considerations are not applicable here.

12   Moreover, the case law actually seems to indicate that it is

13 standard procedure to conduct a contestability investigation if

14 the insured dies during the period in which a policy is still

15 contestable.  See Freeman, 253 F.3d at 535 ("[The insurer]

16 acknowledged the claim but informed [the claimant] that because

17 the death occurred within the two-year contestable period, it

18 would seek information regarding [the insured's] health history

19 prior to her application."); see also Casey, 996 F. Supp. at 943

20 ("[The insurer] conducted a contestable investigation, pursuant

21 to the two year contestable provision.").  Therefore, AG is not

22 estopped from rescinding the Policy based on the timing of its

23 investigation.

24 ///

25 ///

26 ///

27 ///

28 ///

19

1          **2.   AG Is Not Estopped From Rescinding The Policy Based On**
              **The Alleged Inadequacy Of Its Investigation.**
2

3          Ms. Green also argues that AG failed to conduct an adequate

4     investigation because, in conducting its inquiry, it relied only

5     on Mr. Green's medical records rather than contacting his medical

6     providers directly.  However, this argument is logical only in

7     the context of Ms. Green's Cross-claim for Breach of the Implied

8     Covenant of Good Faith and Fair Dealing, a claim which was

9     rendered moot by the Court's finding that Mr. Green materially

10    misrepresented his past drug use on the Application.  Indeed,

11    Ms. Green's own authority raises this issue in the context of the

12    courts' Bad Faith discussions, not as grounds for estoppel.  See

13    McLaughlin v. Conn. Gen. Life Ins. Co., 565 F. Supp. 434, 453

14    (N.D. Cal. 1983), disapproved of on other grounds by Waller v.

15    Truck Ins. Exchange, Inc., 11 Cal. 4th 1 (1995);  Eagan v. Mut.

16    of Omaha, 24 Cal.3d 809, 814, 817 (1979).  Nevertheless,

17    assuming, *arguendo*, that an inadequate investigation is grounds

18    to estop an insurance company from rescinding a policy,

19    Ms. Green's claim still cannot stand.

20         First, Ms. Green cites to no relevant case law, nor has this

21    Court found any, supporting the proposition that, in order to

22    conduct an investigation in good faith, an insurer confronted

23    with evidence of an insured's past drug use must contact the

24    insured's doctors, rather than relying solely on his medical

25    records, to rescind a policy.  To the contrary, the relevant case

26    law indicates that insurance companies can properly rely on

27    medical records to deny a claim.

28    ///

20

1 See <u>Freeman v. Allstate Life Ins. Co.</u>, 253 F.3d 533, 535 (9th
2 Cir. 2001) (insurance company rescinded policy based on
3 information gleaned from medical records and not provided on the
4 application); <u>See</u> <u>also</u> <u>Casey</u>, 996 F. Supp. at 942 (insurance
5 company relied on medical records to justify rescission of
6 policy).

7        Additionally, contrary to the authority provided by
8 Ms. Green, and contrary to her own argument in opposition of this
9 Motion, any further investigation would have been futile.  AG
10 would not have uncovered additional facts that would have
11 required it to honor the Policy.  Indeed, Ms. Green is unable,
12 even now, to put forth such facts that she claims AG should have
13 labored to expose.  Hence, Ms. Green's assertion that AG is
14 estopped from rescinding the Policy, either because it failed to
15 timely investigate or because its actual investigation was
16 legally inadequate, must necessarily be rejected.

17

18 **C.   Ms. Green's Fraud Claim Is Unsupported By Any Evidence.**

19

20        In order to "prevail on a claim for fraud, a plaintiff must
21 show: (1) misrepresentations; (2) knowledge of falsity;
22 (3) intent to defraud; (4) justifiable reliance; and
23 (5) resulting damage."  <u>Minn. Mut. Life Ins. Co. v. Ensley</u>, 174
24 F.3d 977, 982 (9th Cir. 1999).  There is no evidence that AG made
25 false statements to either Mr. or Ms. Green, and the record is
26 utterly lacking in evidence sufficient to support any of the
27 elements of this claim.  Hence, AG's Motion for Summary Judgment
28 is granted.

**CONCLUSION**

Since the Court determined that Mr. Green's answer to 7(D)(2) was a material misrepresentation, the Policy is void *ab initio*.  Therefore, AG's request for declaratory relief is granted.  Ms. Green's Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing are dependent upon the existence of the Policy and therefore must fail.  Additionally, Ms. Green has supplied no evidence to support her claim against AG for fraud, so that claim fails as well.  Finally, Ms. Green has no remaining cause of action on which she can base a claim for punitive damages.

Hence, AG's Motion for Summary Judgment is GRANTED.  AG's request for an order declaring and adjudging that AG Policy No. YM001651575 is null and void *ab initio* and rescinded is GRANTED.  Ms. Green is not entitled to the death benefit under the Policy and is entitled only to a refund of premiums paid for the Policy plus accrued interest, which is to be calculated pursuant to California Civil Code § 3289.  AG is ordered to issue such amount to Ms. Green within thirty (30) days of the date of this Order.  The Clerk of the Court is directed to enter judgment in favor of Plaintiff and Cross-Defendant and close the file.

IT IS SO ORDERED.

Dated: May 16, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE